## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

-----------------------------------------------------------------------x

Terence S. Phillips,

                Plaintiff,                                      **C.A. No.:** 2:23-cv-761

          -against-                                  **DEMAND FOR JURY TRIAL**

Equifax Information Services, LLC,
Experian Information Solutions, Inc.,
Truist Bank,
Lending Club Corporation,

                Defendant(s).

-----------------------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff Terence S. Phillips ("Plaintiff"), by and through his attorneys, and as for his Complaint against, Defendant Equifax Information Services, LLC ("Equifax"), Defendant Experian Information Solutions, Inc. ("Experian"), Defendant Truist Bank ("Truist"), and Defendant Lending Club Corporation ("Lending Club") respectfully sets forth, complains, and alleges, upon information and belief, the following:

### <u>JURISDICTION AND VENUE</u>

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as well as 15 U.S.C. § 1681p *et seq*.

1

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), being that the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

3. Plaintiff brings this action for damages arising from the Defendants' violations of 15 U.S.C. § 1681 *et seq*., commonly known as the Fair Credit Reporting Act ("FCRA").

## PARTIES

4. Plaintiff is a resident of the State of Florida, County of Lee.

5. At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

6. Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district. Equifax is a Georgia corporation registered to do business in the State of Florida and may be served with process upon the Corporation Service Company, its registered agent for service of process at 1201 Hays St, Tallahassee, FL 32301.

7. At all times material hereto, Equifax is a consumer reporting agency regularly engaged in the business of assembling, evaluating and disbursing

information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681(d) to third parties.

8. At all times material hereto, Equifax disbursed such consumer reports to third parties under a contract for monetary compensation.

9. Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district. Experian is an Ohio corporation registered to do business in the State of Florida and may be served with process upon the C T Corporation System, its registered agent for service of process at 1200 S Pine Island Rd #250, Plantation, FL 33324.

10. At all times material hereto, Experian is a consumer reporting agency regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681(d) to third parties.

11. At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

12. Lending Club is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2, and may be served with process upon the Corporation Service

Company, its registered agent for service of process at 1201 Hays St., Tallahassee, FL 32301.

13. Truist Bank is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2, and may be served with process upon the Corporation Service

Company, its registered agent for service of process at 1201 Hays St., Tallahassee, Fl 32301-2699.

## FACTUAL ALLEGATIONS

14. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

15. Plaintiff and his wife filed for bankruptcy under case number 2:18-bk-08300-FMD under Chapter 7 in the United States District Court, Middle District of Florida, with a petition dated September 28, 2018.

16. In the petition, Plaintiff listed a debt associated with SunTrust/Lightstream and a debt associated with Lending Club (together "Debts").

17. Upon information and belief, in December 2019, BB&T and SunTrust Bank merged and now operate under the name, Truist Bank.

18. The Account now associated with Truist Bank belongs to Plaintiff's wife without any joint responsibility on the part of the Plaintiff.

4

19. The Debts were owed before Plaintiff's bankruptcy petition was filed.

20. The Debts were properly listed in the petition.

21. Plaintiff and his wife were discharged in Chapter 7 bankruptcy on May 3, 2019.

22. Chief Judge Caryl E. Delano issued an order of discharge that specifically stated:

> "This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees."

23. Despite the fact that Plaintiff was discharged in Chapter 7 bankruptcy, Truist and Lending Club continued to attempt to collect the discharged Debts by way of Plaintiff's credit report.

24. Neither of the Debts were non-dischargeable.

Truist Dispute and Violation

25. Upon information and belief, on a date better known to Equifax and

Experian ("Bureaus"), the Bureaus prepared and issued credit reports

concerning the Plaintiff that included inaccurate and misleading information

relating to his Truist account with an account number of

5069**********1001 ("Truist Account").

26. The Truist Account first appeared on Plaintiff's credit report on or around

May 17, 2023.

27. Any outstanding balance related to the Truist Account was discharged in

bankruptcy on May 3, 2019 more than four years prior to Truist reporting

the Truist Account on Plaintiff's credit reports.

28. Moreover, the Truist Account only belongs to Plaintiff's wife and Plaintiff

was not jointly responsible for the Truist Account at any time.

29. The inaccurate information furnished by Truist and published by the Bureaus

is inaccurate since this Truist Account belongs to Plaintiff's wife exclusively

and was discharged in bankruptcy and should not have any outstanding

balance associated with it on Plaintiff's credit report.

30. It is materially misleading to continue to report this Truist Account on

Plaintiff's credit reports.

31. By reporting the Truist Account on Plaintiff's credit reports, Defendants give the false impression to potential lenders that Plaintiff has an additional derogatory debt that is not actually his own.

32. Equifax inaccurately marks Plaintiff's Truist Account as a closed, charged-off account, with an open balance of $6,683.00.

33. Plaintiff disputed the Truist Account with Equifax and Experian on numerous occasions, and most recently on June 8, 2023.

34. Plaintiff disputed the Truist Account online and submitted proof demonstrating that the Truist Account is only under Plaintiff's wife's name and not his own and should not be listed with an outstanding balance.

35. Plaintiff received a form response from Equifax on June 5, 2023 stating "WE VERIFIED THAT THIS ITEM BELONGS TO YOU."

36. The item does not in fact belong to Plaintiff and Equifax's statement is false.

37. Plaintiff received a second form response from Equifax on June 7, 2023 stating we "verified this item belongs to you."

38. Plaintiff received a third form response from Equifax on June 20, 2023 stating we "verified this item belongs to you."

39. Experian correctly notes that the Truist Account was "Discharged through Bankruptcy Chapter 7" with no outstanding balance.

40. However, Experian lists the Truist Account as "joint" and includes the Truist Account on Plaintiff's credit report when in fact Plaintiff does not have any responsibility to pay back the Truist Account and was never a joint borrower.

41. Experian responded to Plaintiff's dispute by stating, "[t]he company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute."

42. Upon receipt of Plaintiff's Truist Account dispute letters from the Bureaus, Truist failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on Plaintiff's consumer reports with respect to the disputed Truist Account.

43. Had Truist done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Truist that this Truist Account does not belong to Plaintiff.

44. The Bureaus prepared one or more credit reports concerning Plaintiff subsequent to Plaintiff's discharge from Chapter 7 Bankruptcy that included inaccurate and materially misleading information.

45. The Bureaus obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third

party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the Bureaus in Plaintiff's credit reports.

46. The Bureaus are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy, and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge."

47. The Bureaus should have reported all of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance but did not.

48. The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially whereas here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

49. The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

50. Upon information and belief, furnishers indicated Plaintiff's debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but the Bureaus rejected or otherwise overrode the data they received.

51. In the alternative, the Bureaus blindly relied on the information provided by the furnishers of Plaintiff's credit information even though this information may have conflicted with or was contradicted by information contained in the Bureaus own records as well as the Bureaus' knowledge regarding Plaintiff's bankruptcy and discharge.

52. The Bureaus' reliance on the furnisher(s) who provided inaccurate information was unreasonable.

53. Equifax inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and the Bureaus also reported inaccurate account statuses and payment histories.

54. Despite Plaintiff's disputes that the information on his consumer reports was inaccurate with respect to the disputed Truist Account, the Bureaus did not timely evaluate or consider any of the information or claims of the Plaintiff and did not timely make an attempt to substantially or reasonably verify that the derogatory information concerning the disputed Truist Account was inaccurate.

55. Despite Plaintiff's disputes that the information on his consumer reports was inaccurate with respect to the disputed Truist Account, the Bureaus did not timely evaluate or consider any of the information or claims of the Plaintiff and did not timely make an attempt to substantially or reasonably verify that the derogatory information concerning the disputed Truist Account was inaccurate.

56. Had the Bureaus done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to the Bureaus that this Truist Account did not belong to Plaintiff, should not be reported on his credit reports, and should not include any outstanding balance.

57. Plaintiff applied for a loan with TD Bank and was denied with a letter dated June 22, 2023.

58. Plaintiff applied for a credit card with Capital One bank and was denied.

59. Plaintiff applied for a loan with DCU and was denied.

60. Plaintiff applied for a personal loan from SoFi and was denied.

61. The inaccurate reporting of the Truist Account listed on Plaintiff's credit report was a substantial factor contributing to Plaintiff's inability to qualify for any new credit.

62. The Bureaus have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

63. Potential credit grantors reviewed Plaintiff's credit reports, as evidenced by soft and hard pulls on Plaintiff's credit reports.

64. Upon receipt of the disputes of the account from the Plaintiff, Truist failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to the disputed Truist Account.

65. The Bureaus violated 15 U.S. Code § 1681i (a)(1)(A) by failing to conduct a reasonable investigation since they failed to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

66. Notwithstanding Plaintiff's efforts, Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

67. As a result of Defendants' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future

credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

<u>Lending Club Corporation Dispute and Violation</u>

68. Upon information and belief, on a date better known to Equifax and Experian ("Bureaus"), the Bureaus prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to his Lending club account with an account number of 9235******* ("Lending Club Account").

69. The inaccurate information furnished by Lending Club and published by the Bureaus is inaccurate since this Lending Club Account was discharged in Chapter 7 Bankruptcy and the Bureaus do not list the bankruptcy related to the Lending Club Account.

70. Experian is reporting the Lending Club Account, which was discharged in bankruptcy, as a closed, charged-off account, with a balance of $37,713 written off.

71. A charged-off account that was not discharged in bankruptcy is much more derogatory than an account that was properly discharged by a bankruptcy court.

72. Experian fails to list the bankruptcy, making it appear that Plaintiff did not handle this debt in any manner and it was thereafter charged off.

73. Equifax is similarly reporting this Lending Club Account as being a closed "Charge-off."

74. Equifax fails to list the bankruptcy, making it appear that Plaintiff did not handle this debt in any manner and it was thereafter charged off.

75. It is materially misleading to continue to report this Lending Club Account on Plaintiff's credit reports without noting that the Lending Club Account was discharged in bankruptcy.

76. Defendants inaccurately make it appear that the Lending Club Account was just not paid or taken care of.

77. Plaintiff received a discharge in Chapter 7 Bankruptcy on May 3, 2019.

78. As the Lending Club Account was discharged in bankruptcy, the Lending Club Account should be reporting with a $0 balance and not have any past due amount listed.

79. The Bureaus prepared one or more credit reports concerning Plaintiff subsequent to Plaintiff's discharge from Chapter 7 Bankruptcy that included inaccurate and materially misleading information.

80. The Bureaus obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide

data regarding the individual tradelines reported by the Bureaus in Plaintiff's credit reports.

81. Plaintiff lodged a dispute with the Bureaus on numerous occasions and most recently on May 2, 2023.

82. The Bureaus are aware that they are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy", and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

83. The Bureaus should have reported all of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance but did not.

84. The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially whereas here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

85. The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

15

86. Upon information and belief, Lending Club indicated Plaintiff's debt was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but the Bureaus rejected or otherwise overrode the data they received.

87. In the alternative, the Bureaus blindly relied on the information provided by Lending Club of Plaintiff's credit information even though this information may have conflicted with or was contradicted by information contained in the Bureaus own records as well as the Bureaus' knowledge regarding Plaintiff's bankruptcy and discharge that are a matter of public record.

88. The Bureaus' reliance on the furnisher(s) who provided inaccurate information was unreasonable.

89. The Bureaus inaccurately reported account statuses and payment histories on the Lending Club Account.

90. Despite Plaintiff's disputes that the information on his consumer reports was inaccurate with respect to the disputed Lending Club Account, the Bureaus did not timely evaluate or consider any of the information or claims of the Plaintiff and did not timely make an attempt to substantially or reasonably verify that the derogatory information concerning the disputed Lending Club Account was inaccurate.

91. Had the Bureaus done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to the Bureaus that this Lending Club Account was included in Chapter 7 bankruptcy and should be reporting as such.

92. Plaintiff applied for a loan with TD Bank and was denied with a letter dated June 22, 2023.

93. Plaintiff applied for a credit card with Capital One bank and was denied.

94. Plaintiff applied for a loan with DCU and was denied.

95. Plaintiff applied for a personal loan from SoFi and was denied.

96. The inaccurate reporting of this Lending Club Account listed on Plaintiff's credit report was a substantial factor contributing to Plaintiff's inability to qualify for any new credit.

97. The Bureaus have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

98. Potential credit grantors reviewed Plaintiff's credit reports, as evidenced by soft and hard pulls on Plaintiff's credit reports.

99. Upon receipt of the disputes of the Lending Club Account from the Plaintiff, Lending Club failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the

consumer report of the Plaintiff with respect to the disputed Lending Club Account.

100. The Bureaus violated 15 U.S. Code § 1681i (a)(1)(A) by failing to conduct a reasonable investigation since they failed to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

101. Notwithstanding Plaintiff's efforts, Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

102. As a result of Defendants' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

## **FIRST CAUSE OF ACTION**
### **(Willful Violation of the FCRA as to the Bureaus)**

103. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

104. This is an action for willful violation of the Fair Credit Reporting Act U.S.C. § 1681 et seq.

105. The Bureaus violated 15 U.S.C. § 1681(e) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that the Bureaus maintained concerning the Plaintiff.

106. The Bureaus have willfully and recklessly failed to comply with the Act. The failure of the Bureaus to comply with the Act include but are not necessarily limited to the following:

   a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

   b) The failure to correct erroneous personal information regarding the Plaintiff after a reasonable request by the Plaintiff;

   c) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

   d) The failure to promptly and adequately investigate information which the Bureaus had notice was inaccurate;

   e) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

f)  The failure to continuously note in the credit report that the Plaintiff disputed the accuracy of the information;

g)  The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureaus to delete;

h)  The failure to take adequate steps to verify information the Bureaus had reason to believe was inaccurate before including it in the credit report of the consumer.

107. As a result of the conduct, action and inaction of the Bureaus, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

108. The conduct, action and inaction of the Bureaus was willful rendering the Bureaus liable for actual, statutory and punitive damages in an amount to be determined by a Judge and/or Jury pursuant to 15 U.S.C. § 1681(n).

109. The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Bureaus in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681 (n).

WHEREFORE, Plaintiff, Terence S. Phillips, an individual, demands judgement in his favor against the Bureaus for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681n.

## SECOND CAUSE OF ACTION

### (Negligent Violation of the FCRA as to the Bureaus)

110. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

111. This is an action for negligent violation of the Fair Credit Reporting Act U.S.C. § 1681 et seq.

112. The Bureaus violated 15 U.S.C. § 1681i(a) by failing to delete inaccurate information from the credit file of the Plaintiff after receiving actual notice of such inaccuracies and conducting reinvestigation and by failing to maintain reasonable procedures with which to verify the disputed information in the credit file of the Plaintiff.

113. The Bureaus have negligently failed to comply with the Act. The failure of the Bureaus to comply with the Act include but are not necessarily limited to the following:

   a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b) The failure to correct erroneous personal information regarding the Plaintiff after a reasonable request by the Plaintiff;

c) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

d) The failure to promptly and adequately investigate information which the Bureaus had notice was inaccurate;

e) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

f) The failure to continuously note in the credit report that the Plaintiff disputed the accuracy of the information;

g) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised the Bureaus to delete;

h) The failure to take adequate steps to verify information the Bureaus had reason to believe was inaccurate before including it in the credit report of the consumer.

114. As a result of the conduct, action and inaction of the Bureaus, the Plaintiff suffered damage by loss of credit, loss of ability to purchase and benefit from

credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial.

115. The conduct, action and inaction of the Bureaus was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

116. The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Bureaus in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, Terence S. Phillips, an individual, demands judgement in his favor against the Bureaus for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681o.

## THIRD CAUSE OF ACTION

### (Willful Violation of the FCRA as to Truist and Lending Club, (the "Furnishers"))

117. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

118. This is an action for willful violation of the Fair Credit Reporting Act U.S.C. § 1681 *et seq*.

119. Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when

consumers dispute the accuracy and completeness of information contained in a consumer credit report.

120. Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

121. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a furnisher such as the Defendant must be reported to other agencies which were supplied such information.

122. Furnishers violated 15 U.S.C. § 1681s-2 by failing to fully and properly investigate the dispute of the Plaintiff; by failing to review all relevant information regarding same by failing to correctly report results of an accurate investigation to the credit reporting agencies.

123. As a result of the conduct, action and inaction of Furnishers Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

124. The conduct, action and inaction of Furnishers was willful, rendering Furnishers liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

125. The Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnishers in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, Terence S. Phillips, an individual demands judgement in his favor against Furnishers in for damages together with attorney's fees and Court costs pursuant to 15 U.S.C. § 1681n.

## <u>FOURTH CAUSE OF ACTION</u>

### (Negligent Violation of the FCRA as to Truist and Lending Club (the "Furnishers"))

126. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

127. This is an action for negligent violation of the Fair Credit Reporting Act U.S.C. § 1681 *et seq*.

128. Pursuant to the Act, all person who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when

consumers dispute the accuracy and completeness of information in a consumer credit report.

129. Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

130. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a furnisher such as the Defendant must be reported to other agencies which were supplied such information.

131. Furnishers is liable to the Plaintiff for failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2.

132. After receiving the Dispute Notice from the Bureaus, Furnishers negligently failed to conduct its reinvestigation in good faith.

133. A reasonable investigation would require a furnisher such as Furnishers to consider and evaluate a specific dispute by the consumer, along with all other facts, evidence and materials provided by the agency to the furnisher.

134. The conduct, action and inaction of Furnishers was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

135. As a result of the conduct, action and inaction of Furnishers, Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials.

136. The Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnishers in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, Terence S. Phillips, an individual, demands judgement in his favor against Furnishers for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

## DEMAND FOR TRIAL BY JURY

137. Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues this Complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a) For actual damages provided and pursuant to 15 U.S.C. § 1681o(a) be awarded for each negligent violation as alleged herein;

b) For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c) For Statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);

d) For Statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e) For Punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

f) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681o(a)(2) and 15 U.S.C. § 1640(a)(3);

g) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated:  September 21, 2023                    Respectfully Submitted,

**ZEIG LAW FIRM, LLC**
/s/ Justin Zeig
Justin Zeig, Esq.
3475 Sheridan St. Ste 310
Hollywood, FL 33021
Telephone: (754) 217-3084
Facsimile: (954) 272-7807
justin@zeiglawfirm.com
*Counsel for Plaintiff*